ELLEN OWEN, *et al.*, Respondents, *vs.* J. F. BROCKSCHMIDT, *et al.*, Appellants.

1. *Practice, civil—Trial—Witnesses—Husband and wife—Statute, construction of.*—The wife is a competent witness in a suit, when she is the real, and her husband only a nominal, party in interest (Wagn. Stat., 519-20, § 2).

2. *Statute, construction of—Death of child, damages for—Pecuniary loss—Funeral expenses.*—Under the statute (Wagn. Stat., 520, § 4), the damages for the killing of one's child are not restricted to the mere pecuniary loss. Such construction would make the words—"having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect, or default"—wholly meaningless. Also the funeral, expenses of the child are a part of the damages.

3. *Agency—Liability of principal.*—Authority to purchase wheat necessarily implies and includes authority to give directions as to its delivery.

4. *Damages—Satisfaction—Acceptance of judgment against one tort-feasor.*—The acceptance of a verdict and judgment against one tort-feasor is not conclusive evidence of a compromise of a claim for damages, and should be left to a jury under proper instructions for their decision.

## *Appeal from St. Louis Circuit Court.*

*Stewart & Wieting,* for Appellants.

I. It was error to admit the testimony of Mrs Owens. Her husband was a party to the suit, and she was clearly incompetent. Her husband can collect and is entitled to receive every dollar of this money, and thus his wife is allowed to swear money into his pockets, in defiance of the principle that a " wife cannot testify for her husband."

II. The instruction, that the jury are limited to the actual pecuniary loss of the mother, by being deprived of the services of her child during the period of its minority, should have been given. (Sedg. Dam., 552, and notes; 5 Am. Law R., 397.)

III. The instruction, that if Reifle " was authorized by defendants to buy wheat, and to have the same delivered at the mill, and that in consequence of such authority, &c., * * he bought this wheat, and, in order to deliver it, caused this wagon to be driven on the sidewalk," &c., was wrong. He was employed in the office, and was going outside of his business in ordering this team to drive on the walk. There was no evidence to support this instruction. (Church vs. Mans-

field, 20 Conn., 284; McKenzie vs. McLeod, 10 Bing., 385; Campbell vs. Staiert, 2 Murphy, 389; Satterlee vs. Groat, 1 Wend., 272; Shearm. & Red. Neg., 52, 70, 71; Storey vs. Ashton, 4 Q. B. [L. R.], 476.)

IV. The verdict and judgment against the city, rendered by agreement, released these defendants. It is well settled, that where several tort-feasors are sued for wrong for which they are jointly liable, and an accord and satisfaction is had with one of them, this releases all the others. (2 Greenl. Ev. § 30, and notes; 3 Taunt., 117; 2 Hen. & M., 38; 3 Coldw., 192, and cases cited; 2 Hammond (Ohio), 295; 3 Allen [Mass.], 474; 37 Barb., 317; 3 W. Va., (contra). A judgment may be a good satisfaction if taken as such, as well as a note (2 Hammond, supra); or "an agreement to refer to arbitration." (10 Ex., 569; 2 Johnson's cases, 195.)

*Dillon & Taaffe,* for Respondents.

I. Respondent, Ellen Owen, was a competent witness. (Tingley vs. Cowgill, 48 Mo., 291.)

II. The practice of driving horses and teams on this sidewalk had been constantly practiced for years, while appellants were the owners of the mill, and they assented to it, and sometimes directed it.

III. The instruction asked by defendants, expressly excluding the funeral expenses of the child, was properly refused. (Wagn. Stat., 520, § 4.)

IV. Defendants themselves admitted Reifle had authority to purchase wheat offered at the mill, in the absence of the owners. This necessarily included authority to tell the seller what to do with it after he had bought it.

V. The city not being a joint wrong-doer with defendants, even an accord and satisfaction with it would not be an accord and satisfaction with a stranger and would be no defense. (Grymes vs. Blofield, 1 Croke, 541; Clow vs. Borst, 6 Johns., 37; Bleakley vs. White, 4 Paige Ch., 654; Daniels vs. Hallenbeck, 19 Wend., 408; Stark's Adm'r vs. Thompson's Ex., 3 Monroe, 296.)

VI. The question, whether or not plaintiff, in the suit against the city, agreed to accept a verdict and judgment in satisfaction of her claim for damages, was submitted to the jury.

SHERWOOD, Judge, delivered the opinion of the court.

Action in the St. Louis Circuit Court by William Owen and Ellen Owen, his wife, against the defendants, Brockschmidt and others, for damages for the killing of the infant son of Mrs. Owen, formerly Mrs. Halpin, in whose name the suit was brought, but afterwards, upon her intermarriage with her present husband, he was added also as party plaintiff.

The petition in substance alleged, that the killing of the child occurred through the wrongful act, neglect and default of the defendants in causing and permitting a team of horses to be driven upon the sidewalk in front of their mill for the purpose of unloading a quantity of grain, and that the child was killed by being kicked by one of those horses, while thus on the sidewalk, and damages in the sum of $5000 were asked.

The answer of defendants contained a general denial, and, in addition thereto, the defense was set up, that a suit for the same cause of action had been brought against the city of St. Louis; that, while said suit was pending, it was arranged and agreed between the parties thereto, that the plaintiff would accept a verdict and judgment for the sum of $200, in lieu and satisfaction of said claim; that thereupon a verdict and judgment were entered for that sum; that that judgment is yet in full force, &c., and the said city of St. Louis is ready to pay and satisfy the same, &c., &c.

A reply to this answer was duly filed; a jury impaneled; evidence introduced tending to establish the allegations of the petition, and also evidence in support of the answer of the defendants, and at the conclusion of the testimony a verdict was returned in favor of the plaintiffs for the sum of $1,000.

A motion for a new trial was filed and overruled. The cause appealed to general term, where the judgment of the special term being affirmed, an appeal was taken to this court.

The errors, urged by defendants for a reversal of the judgment rendered against them, will now be examined.

There was no error in permitting Mrs. Owen to testify in the cause, although her husband was also a party thereto, as the husband was but a nominal, and the wife the real, party in interest. (Tingley vs. Cowgill, 48 Mo., 291; Fugate vs. Pierce, 49 Mo., 441, and cases cited; 1 Wagn. Stat., 519-20, § 2.)

The court properly refused to permit § 7, article 4, of City Ordinance No. 5399, to be read in evidence by defendants, even if the terms "merchants or manufacturers" could be so construed as to embrace millers, as that section, while permitting the limited and partial occupation of sidewalks when goods were being received or shipped, manifestly allows such permission to extend alone to "said goods," and cannot by any legitimate rule of construction be made to grant leave to the teams and wagons, used in transporting those goods, to occupy the sidewalk.

The permission here referred to has its existence by virtue only of the ordinance, and obviously cannot exist or be extended beyond the express terms and provisions which give it origin.

The following instruction as to the measure of damages was asked by the defendants:

"The jury are instructed, that this suit is brought by the plaintiffs for their own benefit, to recover damages alleged to have occurred to Mrs. Owen in consequence of her child's death, and not for the injury done to the child itself, and that the jury, if they find for the plaintiffs, will award such sum as they think fair and just in view of the injury necessarily resulting to plaintiffs in consequence of the child's death; and that, in estimating these damages, they cannot allow anything to the plaintiffs on account of pain or suffering inflicted on said child, nor for the mental anguish or wounded feelings of the plaintiff, Mrs. Owen, nor anything on account of funeral expenses of the child; but that the jury are limited to the actual pecuniary loss of the mother by being deprived

of the services of the child during the period of its minority, estimated in money—is the amount to be recovered, and cannot exceed $5,000,"—and was refused by the court, and we perceive no error in such refusal."

The court had given, on the part of the plaintiffs, an instruction as to the measure of damages, which was but an embodiment of § 4 of the Damage Act. That section, *inter alia*, provides:

"In every such action, the jury may give such damages as they may deem fair and just, not exceeding five thousand dollars, with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

The amount of damages, which should be awarded, will, from the very nature of the case, be in a great degree conjectural; the verdicts of different juries will differ widely upon the same state of facts, and it would be extremely difficult, if not utterly impossible, in the great majority of instances to lay down the rule in a more specific manner than has already been done by the statute itself. Besides, the instruction asked by the defendants ignored and made no mention of the circumstances, whether aggravating or mitigating, under which the killing took place, but left it to the jury as a simple question of dollars and cents to say by what amount the mother had suffered actual pecuniary loss in the death of her child. Such a construction as this would make the words, "having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default," above mentioned, wholly meaningless and inoperative. Under the statute the jury are not restricted to such damages as are the necessary and inevitable result of the injuries sustained, but are free also to consider, in making up their verdict, the circumstances attendant on the "wrongful act, neglect or default," which gave rise to the injury complained of. Again this instruction was erroneous in asserting that nothing was to be allowed for "funeral expenses;" such expenses must, if any thing can, be

19—VOL. LIV.

one of the most obvious and necessary injuries resulting from death.

The giving of the following instruction on the part of plaintiffs is also assigned as error:

" If the jury believe from the evidence, that one Frederick Reifle was the employee and agent of the defendants on the 15th day of September, 1868, and that as such he was authorized by them to purchase wheat and have the same delivered at the said O'Fallon Mills, and that, in pursuance of that authority, he did, on the 15th of September, 1868, purchase a load of wheat for defendants, and that, in order to have said load of wheat delivered at the mills aforesaid for defendants, he drove or brought, or caused to be driven or brought, to the sidewalk, west of said O'Fallon Mills, the wagon or other vehicle and two horses spoken of by the witnesses in this case, then the jury will find that the act of said Reifle, acting as aforesaid, was the act of defendants."

This instruction is not entirely unobjectionable, but it is certainly not obnoxious to the objections urged against it by defendants; as the authority to purchase wheat necessarily implied and included authority to give directions as to its delivery.

In addition to that, as the evidence strongly tended to show that farmers' wagons had been frequently driven on the sidewalk with the knowledge of the defendants, it was immaterial as to whether in this particular instance the person mentioned in the above instruction had authority to order the delivery of the wheat on the sidewalk; and so the instruction, even if as faulty as is claimed by the defendants, could not possibly have worked them any injury.

The evidence, offered by the defendants to show, that the claim of Mrs. Halpin against the City of St. Louis (which was admitted to be a claim for the same injuries as that prosecuted against the defendants) had been compromised by accepting a verdict and judgment for $200, did not conclusively establish the fact of such compromise, and for that reason it was properly left to the jury under an appropriate

instruction to say, whether such compromise had been actually effected, and the verdict and judgment for the sums mentioned rendered in Mrs. Halpin's favor accepted in satisfaction for the injury done. But the triers of fact have evidently found, that the arrangement effected with the city was not, and was not intended to be, a satisfaction of plaintiffs' claim, so that it becomes unnecessary to discuss the question, as to when a contract or agreement with one tort-feasor will bar an action against his fellow.

In conclusion there was evidence tending to support the issues on the part of plaintiff; the case as a whole was fairly presented to the jury by instructions which were in the main correct, and the judgment will therefore be affirmed.

Judges Wagner and Vories concur. Judge Adams absent. Judge Napton did not sit.